HARRIE C. COBURN, Appellant, v. DELMAR L. DAVIS, Appellee.

PRINCIPAL AND AGENT: The Relation—Agency and Joint Adventure Distinguished. A contract which provides that one party shall, for a limited time and at his own expense, have the exclusive right to sell the property of another and account for sales in a named manner creates a contract of agency only, and not a joint adventure.

**PRINCIPAL AND AGENT:** Termination of Relation—Agency Cou-
2   pled With Interest. To constitute an agency coupled with an inter-
est, the agent must have some other interest than merely to accom-
plish the purpose of his principal and to earn his commission.

**PRINCIPAL AND AGENT:** Execution of Agency—Fraud of Agent.
3   In an action for an accounting in the sale of real estate lots, record
reviewed, and held to establish fraud on the part of the agent.

Headnote 1: 33 C. J. p. 844. Headnote 2: 2 C. J. p. 532. Headnote
3: 2 C. J. p. 952.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MARCH 9, 1926.

REHEARING DENIED JUNE 21, 1926.

ACTION in equity for an accounting. The facts are stated
in the opinion.—*Affirmed.*

*F. L. Meredith, Tomlinson & Maley, Charles T. McEniry,*
and *Clark & Byers,* for appellant.

*Miller, Kelly, Shuttleworth & McManus,* for appellee.

STEVENS, J.—This appeal presents largely questions of
fact. The parties, on February 17, 1923, entered into a con-
tract in writing, by which appellant agreed to sell the lots in
Outlook Park, a 60-acre addition to the city of Des Moines,
as agent for appellee. The property was purchased by appellee
from Clara Gray, whom he subsequently married, and her sister,
for a consideration of $30,000. The property was subject to
incumbrances aggregating $17,000, which the purchaser as-
sumed and agreed to pay. A note signed by both appellant and
appellee was executed to the vendors for $13,000, the balance
of the purchase price. This note, at the time of the trial, had
not been paid. By the terms of the agency contract, appellee
agreed to pay all the expenses of street grading, curbing, pav-
ing, putting in water mains, sewerage, gas, and electric wiring,
conduits, and other expenses incident to the preparation of
the property for sale. Appellant was to pay all of his personal
expenses and such as were incidental to the survey, advertising,

and sale of the lots. The minimum price fixed for the sale of the property was $500 per acre, which was to be applied first to the payment of the purchase price,—one half of all remaining net profits received from the sale to be divided equally between the parties hereto. The contract gave appellant the exclusive agency for the sale of the lots for a period of eighteen months. In addition to the above contract, appellee, on April 24, 1923, gave appellant a revocable power of attorney, authorizing him to sell the lots at a price and to such persons as appellant might determine, and to execute contracts and conveyances of the lots in his name. Appellant promptly entered upon the performance of the contract on his part, quickly selling a large number of the lots, mostly upon contracts providing for the payment of the purchase price in small installments.

On or about September 11, 1923, appellant entered into a contract in writing for the sale of 196 of the lots, all, upon his theory, that were unsold, to one A. G. Hecker, for $150 per lot, payable as follows: $1.00 down and $3.00 per lot per quarter until all were fully paid for. On September 12th, Davis, by notice in writing, revoked the power of attorney, and a little later commenced an action in equity against Hecker, to cancel and set aside the contract for the purchase of the 196 lots. This was followed by this action, commenced by Coburn, for an accounting and to recover commissions alleged to be due him on the Hecker sale, and for damages. Hecker was made a party defendant in both actions, which, by stipulation of the parties, were consolidated for trial. Sometime prior to the entry of the decree, appellee effected a settlement with Hecker, and he is no longer interested in the outcome of the litigation.

Appellee, by cross-petition, prays the cancellation of the purported sale contract by appellant to Hecker upon the ground that same was executed in fraud and for the purpose of obtaining the lots at a wholly inadequate price. The charge of fraud is denied by appellant, who asserts (a) that he has fully and faithfully performed his contract, and that his commissions are now due; (b) that the parties were co-adventurers in the purchase and sale of the property; (c) that the agency was coupled with an interest, and therefore irrevocable; and (d)

that title to the property is held by appellee in trust for himself and appellant. We will reserve the first proposition for later consideration, and until we have disposed of the other primary contentions of appellant.

I. The contract involves some of the elements of a joint adventure. *Goss v. Lanin,* 170 Iowa 57; *Nelson v. Lindsey,* 179 Iowa 862. But, when carefully analyzed, it is clear that it is one of agency only. The sole duty of appellant, under the contract, was to sell the lots at his own expense and account to appellee out of the sales for $500 per acre and one half of the balance. Upon the completion of the contract, or at the expiration of eighteen months, appellant's interest terminated absolutely, except that his right to share in deferred payments of the purchase price of property to be paid for in installments was reserved. As already stated, title was taken in the name of appellee, who also gave appellant a power of attorney to execute contracts and conveyances in his name. The interest of appellant, therefore, was not in the subject-matter of the contract, but in the commissions earned by him. The financial obligation he assumed was the payment of his own and certain other expenses for advertising, surveying, etc., which were incidental to the sale. It is true that he signed the $13,000 note given for a portion of the purchase price, but it is conceded by all that the value of the property greatly exceeded $30,000, and, as stated, the consideration was to be paid out of the first money realized from the sale of the lots. It is obvious that the transaction was neither a partnership nor a joint adventure.

1. PRINCIPAL AND AGENT: the relation: agency and joint adventure distinguished.

II. It is next insisted by appellant that the contract created an agency coupled with an interest, and that for this reason it was irrevocable, and that the breach thereof by appellee entitles him to damages. What we have already said bears more or less upon this proposition. To constitute an agency coupled with an interest, the agent must have some other interest than merely to accomplish the purpose of his principal and to earn his commissions. 1 Mechem on Agency (2d Ed.); Section 576 *et seq.*; *Alberty v. State,* 10 Okla. Cr. 616 (140 Pac. 1025); *Taylor v. Burns,* 203 U. S. 120 (51 L. Ed. 116).

2. PRINCIPAL AND AGENT: termination of relation: agency coupled with interest.

Appellant cannot be said to have acquired an interest in the subject-matter of the contract. He was to incur no expenses for which appellee was to reimburse him. He did not hold the contract as security for the payment of any sum to become due thereunder, and his sole and exclusive right and duty were to sell the lots and to account for the proceeds received therefor, after deducting commissions. When all of the lots were sold, his interest in the subject-matter of the contract and his authority thereunder terminated finally and absolutely, except, of course, his right to commissions earned, as therein provided.

III. There is nothing in the transaction which can in any way be considered as creating a resulting trust in favor of appellant. Appellee was the sole owner of the property,—the contract recognized that,—and appellant had no interest therein. No part of the purchase price was paid by him, nor did the contract make him liable therefor. The transaction, it must be confessed, presents more of the characteristics of an agency coupled with an interest than of a joint adventure or a resulting trust; but, if appellant's contention that the agency is coupled with an interest were conceded, he could, upon the record before us, recover, at most, only nominal damages.

IV. The issues of complete performance, tendered by appellant, and of fraud, set up by appellee in his answer and cross-petition, are so closely related that we find it convenient to discuss them together. If appellant has shown that he, in good faith, without fraud, and while acting within the scope of his agency, entered into a contract with Hecker to sell him 196 lots, and that these were all that remained in the tract for sale, he has made out a prima-facie case entitling him to recover. If, on the other hand, the transaction was not in good faith, but was fraudulently conceived and executed, a court of equity will not aid him.

So far as the issue of performance is concerned, it makes little difference whether appellant was merely the agent of appellee for the sale of the property, or his agency was one coupled with an interest. If the contract with Hecker was valid and binding upon appellee, he cannot avoid the payment

of commissions by the revocation of the power of attorney or of the agency contract, which he sought to do in October, 1923.

The court below allowed substantially all that appellant could claim as commissions for the sale of lots to other parties. The main contention of appellant urged in this court with reference to commissions alleged to have been earned on other sales concerns property received in exchange for lots sold. The decree fully protects the rights of appellant on this point, and we will give it no further consideration. The doctrine of an agency coupled with an interest, if applied to the facts of this case, will not aid appellant. This is true for the reason that the record contains no sufficient proof of damages for a wrongful revocation or repudiation of the contract by appellee. *Milligan v. Owen*, 123 Iowa 285. It is not shown that he had purchasers for any of the remaining lots upon agreed terms, or that he could have procured purchasers therefor within the term of his agency. In other words, there is no basis shown for estimating damages.

3. PRINCIPAL AND AGENT: execution of agency: fraud of agent.

The decision of the case must, therefore, turn upon the issue of performance. The parties hereto served together in responsible positions in the war with Germany. Appellee resides in Omaha, Nebraska, and, shortly before the contract in question was entered into, appellant visited him in that city. Evidence was introduced which tends to prove that appellant then represented to appellee that he was experienced in the laying out and sale of additions to cities, and that, if appellee could procure the tract in question, he (appellant) would come to Des Moines and sell the lots for him. It is also claimed that he represented that he was financially able to do so. As the result of negotiations between the two men, appellee purchased the property upon the terms already stated, and the contract in question was entered into. A large number of the lots were sold by appellant, and something in excess of $12,000 was received in cash from these sales. It is alleged by appellee in his answer and cross-petition that appellant appropriated, out of the proceeds of the sales, large sums of money to his own use; that he traded lots for other real property of little value, and also for one or more automobiles, in violation of his con-

tract. Appellee also charges that the contract with Hecker was consummated after the power of attorney had been revoked, and for the purpose of defrauding him.

Notice of appellee's election to revoke the power of attorney was served upon appellant at 6:45 P. M., September 12th, in the city of Des Moines, by George Yeager, deputy sheriff. The notice also included a demand that appellant turn over to the officer all contracts and agreements of every kind and nature relating to the sale of lots in his possession. The officer testified that appellant was much surprised, and said that he had dickered with some men about the lots, and that he gave the impression that they were not then sold.

Gertrude Snow testified that appellant told her, on the last Wednesday in August, that he had made appellee an offer of $30,000 for Outlook Park; that appellee had refused to accept the offer; and that he was going to make him take $25,000 for it. She further testified that she dined with appellant, Friday noon, September 14th, and that on this occasion he told her that he had sold the property and closed the deal the day before. The witness was positive as to the date of these conversations. Appellee testified that he received a special delivery letter from appellant at Omaha, on the morning of September 14th, postmarked at Des Moines September 13th. Nothing was said in this letter about the Hecker contract. Appellant testified that the letter was mailed on September 12th, from the rural free delivery box in front of I. Robinson's store, and was perhaps taken to the post office late. A second letter, mailed at Des Moines September 13th, was received by appellee from appellant at Omaha on the 14th, notifying him of the Hecker contract. Appellant denied having had the conversation testified to by Gertrude Snow. Hecker testified that he gave appellant a check for the initial payments on the lots September 12th, and that it was paid. Hecker's account with the bank shows that it was paid September 15th. He did not testify as to the date on which the contract was signed. The check is not referred to in the index to the abstract. This testimony is material largely for its bearing upon the time when the contract with Hecker was in fact executed. If it was after the revocation of the power of attorney, it was unauthor-

ized.  It has further significance on the issue of fraud.  If appellant entered into the contract after the notice had been served upon him by the deputy sheriff, for the purpose of making it appear that he had, prior to the time of such service, in good faith entered into a contract with Hecker, and this was done for the purpose of deceiving appellee, it would be fraudulent, and not binding upon him.  The question of fact at this point is close, but the theory of appellee is corroborated by the testimony of Gertrude Snow and by many circumstances. The evidence further shows that Hecker is 26 or 27 years of age, and employed at a salary of $28 or $30 per week; that he has accumulated and saved but a few hundred dollars; and that he could only have carried out his contract by selling the lots at an advance in price.  The contract required him to pay $3.00 per quarter on each lot.  The quarterly payments would have exceeded his total salary for that period.  Before the addition was put upon the market for sale, a plat was prepared, on which a price for each lot was marked.  Appellee testified that the price marked thereon was the one agreed upon by the parties at which they were to be sold.  The lowest price appearing upon the plat is $195, while the price fixed for most of the lots was much higher.  The lots described in the contract with Hecker were scattered throughout three or four blocks, and many of them were evidently second-choice lots. Evidence pro and con was introduced as to the market value of the lots.  As might be expected, there was a diversity of opinion; but we think the preponderance shows that the lots could have been sold at a price considerably in excess of $150 each.  The testimony of men experienced in the sale of real property in the city of Des Moines tended to show that the 196 lots were, in the aggregate, worth at least twice the amount named in the Hecker contract.

In addition to the matters already referred to, it appears from the testimony of appellee that, on one or more occasions, appellant asserted that he had a right, under the contract, to sell the lots at a nominal price, and that appellee could not prevent him from doing so.  On Labor Day, 1923, appellant wrote appellee a long letter, offering $25,000 for the lots remaining unsold.  In this letter, attention is called to certain

alleged delinquencies on the part of appellee, and that taxes, interest, and other expenses must be paid at once; whereas appellant was indebted to appellee in a large sum for money held or appropriated from the sale of lots. The record is too voluminous to even attempt to set out excerpts of the testimony. We deem it sufficient on this point to say that the fair inference therefrom is that the transaction between appellant and Hecker was, in fact, consummated after the power of attorney had been revoked and notice thereof served upon appellant; that the price fixed for the lots in the Hecker contract was inadequate, and far below that contemplated, if not orally agreed upon, between the parties hereto, at which they were to be sold. The court below found, we think correctly, that the total amount received from the sale of lots was $13,368.23; that of this sum appellee was entitled to $500 per acre for the lots sold, amounting to $6,700, leaving a balance of $6,608.23 to be divided equally between appellant and appellee. The court, however, further found that appellant had already received $5,667.62, thereby making him indebted to appellee, after a proper division was made of the above amount, in the sum of $2,363.50, and decreed that any share of the purchase price of the lots sold after June 6, 1924, should be applied on the above sum, for which judgment was entered until fully paid. The court also canceled the Hecker contract, upheld the cancellation of the agency contract by appellee in October, 1923, and quieted title to the property in him. The decree also makes provision for a division of any amount that might thereafter be derived from the sale of property taken in exchange for lots sold, and decrees the cancellation of all other obligations of appellant to appellee, including the note for $13,000 to Clara Gray and her sister, which he had signed as security. Thus it appears that all of the rights and interests of the parties are fully protected by the decree, which, as we view the record, does full equity between the parties.—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.