## TAYLOR v. BURNS.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 28. Submitted October 16, 1906.—Decided November 12, 1906.

The word "sell" in an agreement affecting, but not in terms granting or conveying, real estate will not be given any more effect upon the title than is necessary to accomplish the purpose of the transaction stated in the agreement; and under the circumstances of this case, the agreement held not to be a conveyance, but a power of attorney to sell at the specified price and subject to revocation, not being coupled with an interest.

The phrase "coupled with an interest," in connection with a power of attorney, does not mean an interest in the exercise of the power, but an interest in the property on which the power is to operate. *Hunt* v. *Rousmanier's Administrator*, 8 Wheat. 174.

76 Pac. Rep. 623, affirmed.

On March 26, 1901, Thomas Burns, the owner of three mining claims, as party of the first part, and Charles M. Taylor, as party of the second part, made the following agreement:

"The said party of the first part, in consideration of the sum of one dollar, lawful money of the United States of America in hand paid, the receipt whereof is hereby acknowledged, and for the further consideration of money and labor heretofore expended and of labor to be hereafter expended in and upon the Magnet mining claim, the Comet mining claim and the Victor mining claim, situate in the California mining district, in the Chiricahua Mountains, Cochise County, Arizona Territory, sells to the said party of the second part the said mining claims upon the terms and consideration following, to wit:

"The said party of the second part shall pay to the party of the first part whenever he shall negotiate, sell or place said mines to any assignee of the said party of the second part, forty-five thousand dollars ($45,000), and in addition thereto

one-eighth ($\frac{1}{8}$) of whatever price the said party of the second part may be able to sell, place or negotiate the said mines, for a consideration in excess of said $45,000; that is to say, the party of the second part is authorized to sell and negotiate the said mines for any price above the sum of $45,000, and may retain out of the said purchase price seven-eighths ($\frac{7}{8}$) of said selling price above such sum of $45,000.

"The said parties hereto hereby mutually agree to aid each other in the negotiation and sale of said mining claims to the end that the same may be sold and the consideration realized as quickly as possible. And the said party of the first part hereby agrees to execute any deed or deeds or conveyances that may be hereafter necessary to convey a good title to said mining claims. This contract is to take the place of and supersede any and all other contract or contracts heretofore made by said parties hereto with reference to said mining claims."

On November 9, 1901, Burns deeded a one-fourth interest in the mining claims to John A. Duncan, and on March 9, 1903, Burns and Duncan conveyed the entire property to S. R. Kauffman as trustee. On February 27, 1903, Thomas Burns executed and filed for record a revocation of all authority given by the agreement to Taylor, and notified him by letter of such revocation. On April 6, 1903, Taylor filed his bill of complaint in the District Court for the county of Cochise, Territory of Arizona, against Burns, Duncan, and Kauffman, alleging that he was the owner of the mining claims, that defendants claimed to have some interest in them, and praying to have his title thereto quieted. The defendants answered, and also filed a cross bill, alleging in substance that plaintiff had no title whatever, and praying that their title be quieted as against him. A trial in the District Court resulted in a decree in favor of the defendants, which was affirmed by the Supreme Court of the Territory, 76 Pac. Rep. 623, and thereupon the case was brought here on appeal.

*Mr. Eugene S. Ives,* for appellant:

It is not claimed that Taylor did not render full considera-
tion. The document itself expressly precludes the notion
that the services to be rendered by Taylor as a consideration
for this document were the services of a broker. The con-
sideration of the transfer is plainly expressed without ambig-
uity. Each was obligated to render such services and could
not obtain pay therefor. The agreement establishes con-
clusively that both sides wanted to sell, and this mutual
desire prompted the mutual agreement to render aid in nego-
tiating or effecting a sale.

It was contended before the lower courts, that the granting
word in this contract, viz., the word "sell," is not a word of
conveyance, but is applicable only to personal property, and
is not a word which can be used or can be construed as giv-
ing any title or right to a mining claim. But for the Statute
of Frauds, § 2708, Rev. Stat. Arizona, 1901, which makes
the term "real estate" under the Statute of Frauds to in-
clude mines and mining claims, mining claims could be sold
orally. Mining claims may be sold by bill of sale so far as
that statute is concerned. *Table Mountain T. Co.* v. *Stran-
ahan,* 20 California, 198. And see also *Union Con. M. Co.*
v. *Taylor,* 100 U. S. 37; *Lockhart* v. *Rawlins,* 21 Pac. Rep.
413.

Mining rights of a citizen who has complied with the acts
of Congress are as complete as though he owned in fee simple,
but they are merely a license granted by the Government.
They are subject to bargain and sale. They are property in
the fullest sense of the word, and may be sold, transferred,
mortgaged and inherited. *Forbes* v. *Gracey,* 94 U. S. 762;
*Belk* v. *Meager,* 104 U. S. 279.

Such a right is transferred by the term "sell." The terms
grant and bargain are not necessary, because the term sell
implies and carries with it all right of the locator to the pos-
session of the claims. 2 Kent's Com. 468.

Whatever the court may decree this instrument to be it

vested in Taylor a right coupled with an interest, and, therefore, was not revocable at the will of Burns. *Hunt* v. *Rousmanier's Admrs.*, 8 Wheat. 175.

A power of attorney coupled with an interest is irrevocable, and binds the party giving it, and may be executed after his death. *Napp* v. *Alvord*, 10 Paige, 205; 2 Kent Com. 643; *Bony* v. *Smith*, 17 Illinois, 533; *Raymond* v. *Squire*, 11 Johns. 47.

*Mr. William Herring* and *Mrs. Sarah H. Sorin*, for appellee:

The instrument under which plaintiff claims title is not a deed of conveyance. Though an instrument contains words expressing absolute transfer, it will not be construed as a deed if by taking the whole instrument together it appears that such was not the intention of the parties. Particular words may not be considered as though isolated, but the instrument must be considered as a whole in order to ascertain the intention and obligation of the parties. *Jackson* v. *Meyers*, 3 Johns. 388, 395; *Jackson* v. *Moncrief*, 5 Wend. 26; *Dunnaway* v. *Day*, 63 S. W. Rep. 731; *Stewart* v. *Lang*, 78 Am. Dec. 414; *Sherman's Lessee* v. *Dill*, 2 Am. Dec. 408; *Wallace* v. *Wilcox*, 27 Texas, 60, 67; *Peterson* v. *McCauley*, 25 S. W. Rep. 826; *Ives* v. *Ives*, 13 Johns. 236; *Jackson* v. *Clarke*, 3 Johns. 424; Devlin on Deeds (2d ed.), sec. 7 *et seq;* *Williams* v. *Paine*, 169 U. S. 76; *O'Brien* v. *Miller*, 168 U. S. 297; *Morrison* v. *Wilson*, 30 California, 344.

To "convey" real estate is, by a proper instrument to transfer the legal title to it from the present owner to another. *Abendroth* v. *Greenwich*, 29 Connecticut, 365; *Cross* v. *Weare Commission Co.*, 153 Illinois, 510.

A mining claim is real estate, and the title thereto can only be conveyed by deed. *Hopkins* v. *Noyes*, 2 Pac. Rep. 280; *St. Louis M. & M. Co.* v. *Montana M. Co.*, 171 U. S. 650; *Manuel* v. *Wulff*, 152 U. S. 505; *Gillis* v. *Downey*, 85 Fed. Rep. 483; *Belk* v. *Meagher*, 104 U. S. 279; *Harris* v. *Equator M. & S. Co.*, 8 Fed. Rep. 863; Rev. Stat., Arizona,

1897, pars. 214, 228, tit. 2, Conveyances, and § 12, par. 2308, Limitations.

The authority conferred upon Taylor by the agreement, was not a power coupled with an interest. The interest is merely in that which is to be produced by the exercise of the power. Such an interest does not make the power irrevoca- ble: *Hunt* v. *Rousmanier's Adm.*, 8 Wheat. 174; *Mansfield* v. *Mansfield*, 6 Connecticut, 559; *Trickey* v. *Crowe*, 71 Pac. Rep. 965; *Hall* v. *Gambrill*, 88 Fed. Rep. 709; *Tinsley* v. *Dowell*, 26 S. W. Rep. 948; *Blackstone* v. *Buttermore*, 53 Pa. St. 266; *Hartley's Appeal*, 53 Pa. St. 212; *Stitt* v. *Huidekoper*, 17 Wall. 385; *Durkee* v. *Gunn*, 21 Pac. Rep. 637; Mechem on Agency, § 207.

It was merely an authorization to Taylor to negotiate a sale of the mining claims for any price over $45,000, and to retain as his commission seven-eighths of such excess. No time being fixed for the duration of the contract, either party was at liberty to terminate it at will. *Trickey* v. *Crowe, supra; Coffin* v. *Landis*, 46 Pa. St. 426; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 384; *Rowan & Co.* v. *Hull*, 47 S. E. Rep. 92; Mechem on Agency, § 210; *Cadigan* v. *Crabtree*, 70 N. E. Rep. 1033; *S. C.*, 186 Massachusetts, 7; *Knox* v. *Parker*, 25 Pac. Rep. 909.

Neither in terms nor by the nature of his contract does the principal bind himself not to revoke the authority conferred.

The agent did not have the exclusive right to negotiate a sale, and therefore there was nothing to prevent the principal from making a sale of his own property. *York* v. *Nash*, 71 Pac. Rep. 59; *Baars* v. *Hyland*, 67 N. W. Rep. 1148; *Golden Gate Packing Co.* v. *Farmers' Union*, 55 California, 606.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

This case turns upon the scope and effect of the agreement of March 26, 1901. It is claimed by plaintiff that it is a con-

veyance, passing title; by defendants, that it is simply a power of attorney, subject to revocation. Its meaning is to be determined by a consideration of all its terms and not by any particular phrase. The first paragraph recites a consideration, and states that for the consideration the first party "sells" the claims to the party of the second part. If this were all it would suggest a purpose to pass title, but the paragraph closes with a reference to further stipulations, its language being "sells to the said party of the second part the said mining claims upon the terms and consideration following, to wit." The next paragraph authorizes the party of the second part to "sell and negotiate" the mines for any sum above $45,000, and to retain out of this purchase price seven-eighths of the excess of $45,000, while in the last paragraph the party of the first part "agrees to execute any deed or deeds or conveyances that may be hereafter necessary to convey a good title to said mining claims."

Nowhere in the instrument does the party of the second part assume any obligations, except the general one in the third paragraph, by which both parties mutually agree to aid each other in the negotiation and sale of the mining claims. The instrument does not in terms grant or convey. The nearest approach to a word of conveyance is "sells." This is more apt in describing the passing of the title of personal than of real property. Not that this is decisive, for not infrequently it is held to manifest an intent to convey the title to the property named, whether real or personal. But when the purpose of the transaction is stated the word will ordinarily have no more effect upon the title than is necessary to accomplish the purpose. The purpose here named was the giving of authority to make a sale to some third party at not less than a named price, which price would belong to Burns, less the commission on the sale. For this it was not necessary to pass title with the authority. And it is not ordinarily to be expected that an owner will part with title before receipt of purchase price, or security therefor.

Appellant contends that by this instrument he became owner, while Burns was only an equitable mortgagee. But no time is fixed for the sale, and therefore no time for the maturity of the supposed debt, nor is any liability cast upon Taylor for the payment of any portion thereof. Indeed, its amount is uncertain, whether $45,000, or $45,000 plus one-eighth of a price which should or could be realized on a sale. If it were true that title passed then Taylor could immediately convey to a third party, who, by payment of $45,000, would acquire the property. We need not inquire whether there was a breach of contract for which Taylor could recover damages. The question here is the effect of the contract upon the title. While it may be conceded that the meaning and scope of the instrument are not perfectly clear, yet it seems more reasonable to hold that it was simply a grant of authority to Taylor to "sell and negotiate" the mines, and not also a transfer to him of the title to the property.

As such an instrument it was subject to revocation. It was not a power of attorney coupled with an interest. "By the phrase 'coupled with an interest,' is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate." *Hunt* v. *Rousmanier's Administrators*, 8 Wheat. 174. Now as we construe this contract, Taylor was to receive, in case he made a sale, seven-eighths of the price in excess of $45,000—that is, he was to be paid for making the sale. It was an interest in the exercise of the power and not an interest in the property upon which the power was to operate.

We see no error in the ruling of the Supreme Court of the Territory of Arizona, and its judgment is

*Affirmed.*