416 P.2d 979

PHOENIX TITLE AND TRUST COMPANY, an Arizona corporation, Executor of the Last Will and Testament of Charles Thomas Roberts, deceased, Appellant,

v.

Manning E. GRIMES et al., Appellees.

No. 7868.

Supreme Court of Arizona.

In Banc.

July 18, 1966.

Rehearing Denied Sept. 20, 1966.

Carson, Messinger, Elliott, Laughlin & Ragan, by Richard H. Elliott, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellees.

UDALL, Justice.

From a summary judgment in favor of the appellees [defendants herein] decreeing that appellant [plaintiff herein] take nothing by its complaint, and ordering that defendants have and recover their costs in the sum of $10.00, the plaintiff, as executor of the estate of Charles Thomas Roberts, prosecutes this appeal.

The parties are in substantial agreement regarding the facts of this case. Roberts died a resident of Maricopa County, Arizona on June 12, 1960. For several years preceding his death he held an Arizona real

estate broker's license and operated a brokerage business at Cave Creek, Arizona under the name and style of "Tom Roberts and Associates". He was the sole proprietor of the business.

Early in 1957 Roberts found that a parcel of approximately 500 acres of desert land in the Black Canyon area was for sale. He thereupon suggested to the defendants that they join together in a venture to purchase, develop, subdivide, and resell this land for their mutual benefit. The proposal was adopted and the venturing parties consisting of 29, which included Roberts and his wife, entered into two simultaneous agreements which established and defined their rights and obligations:

(a) One agreement dated June 24, 1957 by which the 29 venturers, as second beneficiaries, agreed to purchase the 500-acre tract of land, which land was held by the Phoenix Title & Trust Company, as trustee in Trust No. 2102, [Roberts and wife becoming the owners of 7/24th interest in the Trust.]

(b) The other agreement, dated June 24, 1957, provided that Roberts and L. C. Acord, and their "heirs or assigns", were to have the exclusive right to sell said property held in trust, and that on July 29, 1957, Acord sold and assigned over all his interest therein to Roberts, who thereafter acted as the sole agent under the terms of the agreement.

Under the terms of the agreement Roberts was to subdivide, advertise, promote, develop and sell the lots into which the property was subdivided, at his own expense except for the cost of title and escrow charges; that he was also to do certain other acts in connection with the development, and that he was to receive a commission of thirty percent of the total sale price of the lots as the same were sold.

. It is alleged that Roberts performed the covenants of the agreements during the three years prior to his death; that he per-formed all of the conditions of the contract, and at the time of his death there remained only forty-one lots unsold out of the more than 121 lots or parcels which were originally subdivided. Roberts received as commissions for the sales of approximately 80 lots the sum of $53,256.95.

Subsequent to the death of Roberts, defendants served notice on decedent's executor that it was their intention to not permit the executor to carry on in performing the terms of the agreement. As the result of the termination of this contract the plaintiff, as executor of the estate, contends the estate is deprived of profits and commissions to which it would have been entitled upon selling off the remaining lands, and alleged that at all times he was ready, willing and able to perform the duties which remained to be performed by Roberts, to-wit, the sale of the remaining lots and undertaking the upkeep of the roads and maintenance until all the lots had been sold. This breach of contract, plaintiff contends, amounts to approximately $27,000. Plaintiff filed suit to recover damages to that extent for the breach of the contract referred to as the development agreement.

The defendants answered the complaint and served plaintiff with certain written interrogatories, to which plaintiff filed answers. Thereafter defendants moved for summary judgment, which motion was granted by the court.

The plaintiff assigns as error the court's granting of defendants' motion for summary judgment on the grounds the development agreement, which is the basis of plaintiff's complaint, created in Roberts a contract interest which survived his death and inured to the benefit of his estate; the plaintiff contending the contract was performable by the representative of the deceased; that the executor was at all times ready, willing and able to perform in accordance with the terms of the agreement but was wrongfully prevented from doing so by the defendants, thereby resulting in substantial damage and loss to the estate of the deceased.

184

It is the contention of plaintiff that a power or agency was granted to the deceased to sell all of the subdivided land, which power was coupled with an interest in the land. He further contends that this power coupled with an interest, survived the death of Roberts and the executor of Roberts' estate had the right to carry out, perform and fulfill the obligations of the decedent under the facts in this case; that the death of the decedent did not terminate the contract previously entered into, which pertained to the deceased, his heirs or assigns.

The defendants contend that the authority to sell on a commission is not an authority coupled with an interest, and therefore that it terminates upon the death of the broker.

In 1823, the United States Supreme Court described a power or agency, coupled with an interest. In Hunt v. Rousmanier's Administrators, 8 Wheat. (U.S.) 174, 203, 5 L.Ed. 589, 597, Chief Justice Marshall stated that if a power

" * * * be coupled with an 'interest,' it survives the person giving it, and may be executed after his death. * * * [W]hat is meant by the expression 'power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing."

In Taylor v. Burns, 203 U.S. 120, 27 S.Ct. 40, 51 L.Ed. 116, the Supreme Court of the United States reiterated this in the following words:

" ' * * * By the phrase "coupled with an interest," is not meant an interest in the exercise of the power, but an interest in the property on which the power is to operate.' "

In Williston it is stated that the prevailing view is that the power is irrevocable whether the interest is legal or equitable. See Williston, Contracts § 280, 3rd Ed.; 3 Am.Jur.2d, Agency, § 63; McColgan v. Bank of California Nat. Ass'n, 208 Cal. 329, 281 P. 381, 65 A.L.R. 1075; Lane Mortg. Co. v. Crenshaw, 93 Cal.App. 411, 269 P. 672. See also, State ex rel. Everett Trust & Savings Bank v. Pacific Waxed Paper Co., 22 Wash.2d 844, 157 P.2d 707, 159 A.L.R. 297.

In this instance, the two agreements entered into on June 24, 1957, were one and the same transaction, and the events described in the documents were consideration for each other. Roberts found the land to be subdivided. He found the venturers, including himself and his wife; he agreed to advertise, promote, develop and sell the lots, which he had a part interest in, at his own expense. In other words, his interest was not only an interest in the exercise of the power but his was a very definite interest in the property on which the power was to operate. In fact, he was so instrumental in creating the transaction, and his agency was such an inseparable part of the transaction, that the threads of the agreements cannot be torn from the warp and woof of the transaction itself. Certainly, under these circumstances, Roberts had a power coupled with an interest. As was stated in Lane Mortg. Co. v. Crenshaw, supra:

"Concretely, a power is said to be coupled with an interest when the power forms part of a contract, and is a security for money or for the performance of any act which is deemed valuable, and is generally made irrevocable in terms, or, if not so, is deemed irrevocable in law." 269 P. at 679.

See also Ecclestone v. Indialantic, 319 Mich. 248, 29 N.W.2d 679.

 The power which Roberts received in this transaction was a power coupled with an interest, and is irrevocable. It is of course the general rule that the death of either principal or agent terminates. the relationship. However, the exception to the rule is that if the agency or power

of the agent is coupled with an interest in the subject matter of the agency, the power so coupled will survive to the personal representative of the agent upon the death of the agent. Commercial Nursery Co. v. Ivey, 164 Tenn. 502, 51 S.W.2d 238, 104 A.L.R. 177.

 Although contracts to perform personal acts which can only be performed by the particular person contracted with are discharged by death of the person who is to perform said acts, this rule does not apply where the services were such that they could be performed by others on behalf of the personal representative of the

decedent. In re Burke's Estate, 198 Cal. 163, 244 P. 340, 44 A.L.R. 1341. We are convinced here that the executor could hire qualified, licensed real estate agents to carry on the agency herein which was coupled with an interest.

Reversed and remanded for trial.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and McFARLAND, J., concur.

NOTE: Justice LORNA E. LOCKWOOD did not participate in the determination of this appeal.