ECCLESTONE *v.* INDIALANTIC, INC.

1. CORPORATIONS—LEGALITY OF VOTING TRUST.
    A voting trust or other combination of a majority of stockholders is unlawful only if the gain was to be at the expense of the corporation or in some way was to work a wrong to the other stockholders.

2. SAME—VOTING TRUST—CONSERVATION OF PROPERTY INTEREST.
    A voting trust, which separates the voting power from the beneficial interest, is justified where there is a property interest to conserve.

3. SAME—VOTING TRUST—CONSIDERATION—ILLEGAL PURPOSE.
    A voting trust, supported by consideration, constitutes a binding contract unless void by reason of illegal purpose.

4. SAME—VOTING BY STOCKHOLDERS—CONTRACT NOT TO VOTE.
    A stockholder has no right to vote at corporate meetings if it is so stipulated when the stock was issued, for the stipulation is then a term of his contract.

5. SAME—CONSENT THAT ANOTHER SHALL VOTE STOCK.
    One may accept the ownership of stock with a condition which involves consent on his part that another shall vote it.

6. SAME—PROXY—IRREVOCABILITY—CONSIDERATION.
    A proxy or power of attorney to vote stock is generally irrevocable, if so in terms, when it is based upon a consideration, or coupled with an interest, and is not contrary to public policy, as where it is given, for the purpose of additional security, to creditors of the corporation, or to a trustee for their benefit, or is given to a person having rights under an executory contract for the sale of stock.

7. SAME—VOTING RIGHTS OF STOCK.
    The right of the holder of the legal title of corporate stock to vote it at corporate elections may be restrained by agreements which he may make with third parties.

8. SAME—SEPARATION OF VOTING RIGHTS OF STOCK—PUBLIC POLICY.

An agreement whereby creditor, members of whose family continued to hold stock of corporation, retained, until assets of corporation were substantially liquidated, voting rights in stock sold to plaintiff was not against public policy since there was a property interest to conserve and a definite policy of the corporation to be carried out.

9. SAME—PROXY—REVOCATION.

A proxy to vote stock, not coupled with any interest in the stock other than the right to vote it, is revocable at any time notwithstanding any agreement that it shall be irrevocable, but where such power is coupled with an interest or is given as a part of a security or is necessary to effectuate such security, it is not revocable.

10. POWERS—REVOCATION.

A power is said to be coupled with an interest when the power forms part of a contract, and is a security for money or for the performance of any act which is deemed valuable, and is generally made irrevocable in terms, or, if not so, is deemed irrevocable in law.

11. CORPORATONS—VOTING RIGHTS COUPLED WITH AN INTEREST—SALE OF STOCK.

The right of person who retained voting rights in stock of corporation of which he had been a director, president and moving spirit for about 12 years, who was a creditor and whose continued services could best be retained by retention of such voting rights, were not affected by sale of the stock to plaintiff, where such rights were coupled with an interest not only beneficial to their holder but to the corporation itself.

Appeal from Wayne; Webster (Arthur), J. Submitted October 15, 1947. (Docket No. 43, Calendar No. 43,847.) Decided December 3, 1947.

Bill by Edwin L. Ecclestone against Indialantic, Inc., a Florida corporation, and Harold H. Emmons and another to determine that defendant Emmons did not have right to vote certain stock of defendant Indialantic, Inc., owned by plaintiff. Decree for defendants. Plaintiff appeals. Affirmed.

*Goddard, McClintock & Johnson,* for plaintiff.

*Thomas G. Long, A. W. Sempliner* and *Harold H. Emmons, Jr.,* for defendant Emmons.

Sharpe, J. This case involves the right to vote 451 shares of the common stock of Indialantic, Inc., a Florida corporation. The facts are not in dispute and are as follows: Indialantic, Inc., is a corporation organized in 1935 and now exists under the laws of the State of Florida. On June 8, 1942, Harold H. Emmons was the owner of 451 shares of stock of the above corporation. Owing to certain litigation he was then having with the George H. Cummings Foundation he entered into an agreement to transfer this stock to the Detroit Orthopedic Clinic subject to the following reservation:

"As a part consideration for and a condition precedent to the issuance to the undersigned of certificate No. 44 for 451 shares of the common capital stock of Indialantic, Inc., a Florida corporation, and as a part of the disposition this day being made between William E. Dowling, prosecuting attorney, George H. Cummings Foundation, a Michigan nonprofit corporation, and Harold H. Emmons, it is hereby agreed that Harold H. Emmons shall have the sole right to vote the said shares of stock represented by said certificate at all corporate meetings of Indialantic, Inc., until the assets of said corporation shall have been substantially liquidated.

"Dated at Detroit, Michigan, this 9th day of June, A.D. 1942.

"(sgd)          The Detroit Orthopedic Clinc,
          "By Elizabeth G. Schemm, Pres.,
          "By Helen H. Preble, Sec'y.
                              "(Seal)"

The following notice was given to Indialantic, Inc.,:

"Take notice that I have transferred to the Detroit Orthopaedic Clinic, a Michigan corporation, certificate No. 44 for 451 shares of the common capital of your corporation, upon the express reservation by me and agreement by the Detroit Orthopedic Clinic that I shall retain the sole voting rights of said stock until this corporation shall be substantially liquidated and you will also take notice that no transfer of said certificate, or the shares of stock represented by it, may be made by your corporation, except subject to the ownership by me of said voting rights.

"Dated.  June 8, 1942.

"(sgd.) H. H. EMMONS."

On March 16, 1946, plaintiff entered into an agreement with the Clinic, whereby he agreed to purchase and the Clinic agreed to sell the 451 shares of stock for the sum of $50,000, $10,000 as a down payment and the balance within a year with interest at 5 per cent.  However, in the agreement plaintiff, Edwin L. Ecclestone, expressly states that he has notice of the ownership of the voting rights of defendant Emmons and agrees that the Clinic made no warranties or representations regarding the same.

Subsequent to the purchase of the stock, plaintiff demanded of defendant Emmons that he cancel his right to vote the stock, which demand was refused. He then demanded that the corporation transfer the stock to him.  The corporation was willing to transfer the stock to plaintiff subject to the right of Emmons to vote the stock.

In September, 1946, plaintiff began the instant suit in chancery and sought a decree to the effect that plaintiff has the right to vote the shares of stock represented by certificate No. 44.  The cause came on for trial and the trial court entered a decree dismissing plaintiff's bill of complaint.

Plaintiff appeals and urges that instruments separating ownership and voting rights of stock are contrary to public policy and void; and that the right of Emmons to vote stock is a proxy and is revocable at the discretion of the owner of the stock.

In dismissing plaintiff's bill of complaint the trial court filed a written opinion, a part of which reads as follows:

"In the case at bar, the settlement of extensive litigation which concerned the contracting parties is without doubt a sufficient consideration for the agreement. After he parted with the shares of stock turned over to the Clinic, Emmons himself, for several years, was not a stockholder, although members of his family were. At the present time he is a minority stockholder. It would appear also that he is a creditor of the corporation or was at the time the agreement was entered into.

"The agreement retaining the voting rights was calculated to assure continuity of policy and management, to vest and retain the management of the corporation in the persons originally promoting it, and contemplated an orderly liquidating of the corporation's assets.

"In approaching the legal problem before it, the court must assume all parties entered into the agreement in good faith without any intention of prejudicing the rights of or defrauding the minority stockholders, and its validity must be tested as of the date and under the circumstances it was made. If carried out in good faith, who can say that, at the date it was made, it would not be for the best interests of all the stockholders? Certainly the court cannot, on the evidence now before it.

"Nearly five years after the agreement was entered into, the plaintiff raises the issue that retention of the voting rights would enable Emmons to pay himself for services rendered and to be rendered to the detriment of the stockholders. There was no

such vice inherent in the settlement agreement at the date of execution. If Emmons was a creditor at that time, he was justified in retaining the voting power to protect such creditor rights. If he performed services subsequently, he is entitled to pay for services rendered. If a director, he cannot, of course, vote on any matter in which he is personally concerned. If fictitious claims are presented or exorbitant charges allowed by the directors, minority stockholders have a remedy in the courts.''

There appears to be no case in Michigan directly upon the point involved here. However, in 13 Am. Jur. pp. 540–542 it is said:

''The tendency of the courts has been· to change their earlier hostility toward voting trusts to a more liberal view, and the propositions that 'it is as legitimate for a majority of stockholders to combine as for other people' and that the combination is unlawful only if 'the gain was to be at the expense of the corporation or in some way was to work a wrong to the other stockholders' are generally recognized as sound law.

''The argument against the validity of voting trusts and other similar agreements as a class has, for the most part, been based on the ground that the separation of the voting power of corporate stock from its beneficial ownership is contrary to public policy. This argument, however, has been considered to have lost much of its force under modern business conditions.   *   *   *

''The validity of a voting trust or other similar agreement for control of the voting power of corporate stock has generally been regarded as depending, to a considerable extent, upon the legality of the purpose or object for which it was created. Assuming that the general policy of the law prohibits the separation of the voting power from the beneficial interest, yet such a separation is now deemed to be justified where there is a property interest to con-

serve, some definite policy in the interest of the corporation to be carried out, some beneficial interest of the stockholders to be served, or some purpose not unlawful of an advantageous character to the stockholder to be effectuated. This rule has operated in a number of cases to sustain a voting trust where it was part of a plan for reorganization of a corporation in financial difficulty. Voting trusts or other similar agreements have been upheld where they were made in order to aid a financially embarrassed corporation in obtaining a loan or to protect its creditors. Among the purposes for which voting trusts or other similar agreements have been sustained are: To assure continuity of policy and management, especially of a new corporation desirous of attracting investors; to vest and retain the management of the corporation in the persons originally promoting it; to have railroad stock voted in the interest of a county the people of which desire to have a railroad constructed; to prevent a rival concern from acquiring control of the corporation; to carry out a proposed sale of the corporation's assets and to facilitate its dissolution; and to enable two holding companies to operate jointly a corporation controlled by them. Among purposes which have been held to render voting trusts or other similar agreements invalid are: To make a profit for participating stockholders through contracts with the corporation, and to secure employment and salaries for the contracting parties.    *    *    *

"Assuming that a voting trust agreement is supported by consideration, it constitutes a binding contract unless void by reason of illegal purpose."

In 5 Fletcher, Cyc. of Corp. (Rev. and Perm. Ed.), it is said:

"A stockholder has no right to vote at corporate meetings if it is so stipulated when the stock is issued, for the stipulation is then a term of his contract. One may also accept the ownership of stock

with a condition which involves consent on his part that another shall vote it." (p. 116, § 2029.)

"A proxy or power of attorney to vote stock is generally irrevocable, if so in terms, when it is based upon a consideration, or coupled with an interest, and is not contrary to public policy, as where it is given, for the purpose of additional security, to creditors of the corporation, or to a trustee for their benefit, or is given to a person having rights under an executory contract for the sale of stock, or the like, and this has been held to be true even though it is not stated in the instrument itself that the proxy shall be irrevocable." (p. 188, § 2062)

"There are two lines of authority in a conflict which is more apparent than real. Both lines of authority agree that an agreement is either invalid or revocable, which separates voting power from stock, (a) if it has an illegal or no lawful purpose, (b) no consideration or interest to support it, (c) is a mere proxy, or (d) is defectively instrumented as a trust or contract.    *    *    *

"To summarize: There is no 'separation' of 'voting right' from 'stock', or else it is regarded as a valid one, where it is under a revocable proxy, or under agreement upon consideration or coupled with an interest with a provision against revocation, or where the legal title is put in a trustee who votes the stock under a valid trust." (pp. 208, 220, § 2065)

In 14 C. J. p. 913, § 1417, it is said:

"The right of the holder of the legal title of corporate shares to vote in respect of them at corporate elections may be restrained by agreements which he may make with third parties."

See, also, *Smith* v. *San Francisco & Northern Pacific R. Co.,* 115 Cal. 584 (47 Pac. 582, 35 L. R. A. 309, 56 Am. St. Rep. 119); *Elger* v. *Boyle,* 69 Misc.

273 (126 N. Y. Supp. 946); *Alderman* v. *Alderman,* 178 S. C. 9 (181 S. E. 897, 105 A. L. R. 102); *Brightman* v. *Bates,* 175 Mass. 105 (55 N. E. 809); *White* v. *Snell,* 35 Utah, 434 (100 Pac. 927).

There appears to be a conflict of authority upon the right of stockholders to separate the voting right from the ownership of stock. The prevailing view supports the statement made in 7 R. C. L. p. 350 and 13 Am. Jur. p. 541, cited with approval in *Alderman* v. *Alderman, supra:*

"Assuming that the general policy of the law prohibits the separation of the voting power from the beneficial interest, yet such a separation is now deemed to be justified where there is a property interest to conserve, some definite policy in the interest of the corporation to be carried out, some beneficial interest of the stockholders to be served or some purpose not unlawful of an advantageous character to the stockholder to be effectuated."

See, also, 14 C. J. p. 915.

In our opinion the facts warrant a finding that there was a property interest to conserve and a definite policy of the corporation to be carried out. There was a need to assure continuity of policy and management, which could be accomplished by a retention of the voting rights. We conclude that the agreement was not against public policy.

It is also urged by plaintiff that the right of Emmons to vote the stock is a proxy and as such is revocable. The general rule on the right to revoke a proxy to vote stock is well stated in 14 C. J. p. 911, § 1413:

"According to the weight of authority, a proxy to vote stock which is not coupled with any interest in the stock other than the right to vote it, may be revoked at any time, notwithstanding any agreement that it shall be irrevocable."

In *Arcweld Manfg. Co.* v. *Burney,* 12 Wash. (2d) 212 (121 Pac [2d] 350), it was held that there are two exceptions to the rule that the authority of an agent may be revoked. They are: (1) Where the authority or power is coupled with an interest, and (2) where the authority is given as part of a security, or is necessary to effectuate such a security.

In *Lane Mortgage Co.* v. *Crenshaw,* 93 Cal. App. 411, 428 (269 Pac. 672), a power coupled with an interest was defined in the following terms:

"Concretely a power is said to be coupled with an interest when the power forms part of a contract, and is a security for money or for the performance of any act which is deemed valuable, and is generally made irrevocable in terms, or, if not so, is deemed irrevocable in law."

In the case at bar Emmons was a director and president of the company for a period of about 12 years, during which time few stockholders' meetings were held. In the early years of the corporation's existence its financial situation did not warrant the payment of compensation to him. The services rendered by Emmons were important to the corporation, among which was the defeat of the claim of the United States Internal Revenue Department for about $130,000; the completion of the litigation of *Long* v. *Earle,* 277 Mich. 505; the sale of Earle's home under the decree; negotiation for the leasing of the hotel owned by the corporation; sale of houses owned by the corporation; negotiation for the sale of the casino and matters vital to the welfare of the corporation. In all of these activities Emmons was the moving spirit. His continued services could best be retained by his having the right and power to vote the stock in question. The interest of Emmons was something more than merely being permitted

to vote the stock. Its purpose was not only to benefit Emmons, but also the donor and the corporation itself. In our opinion the power to vote the stock was coupled with an interest which was not affected by the sale of the stock to plaintiff.

The decree of the trial court is affirmed, with costs to defendants.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.