INDIALANTIC, Inc., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12120.

United States Court of Appeals Sixth Circuit.

Decided Oct. 25, 1954.

As Amended Nov. 10, 1954.

204

B. Dave Bushaw, and Arnold F. Zeleznik, Detroit, Mich., for petitioner.

C. Guy Tadlock, Washington, D. C. (H. Brian Holland, Ellis N. Slack, A. F. Prescott, Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

PER CURIAM.

In its income tax for 1948 petitioner deducted the amount of $50,000 voted to be paid as compensation for legal, presidential and managerial services to Harold H. Emmons, who had been president and director of the company for some thirteen years. The Commissioner disallowed the entire deduction. The Tax Court determined that the reasonable compensation for the thirteen-year period was $32,500. Petitioner had already paid Emmons $15,000 in $5,000 payments made in 1944, 1945, and 1947

and the Tax Court therefore permitted the deduction in 1948 of $17,500.

The facts are not in controversy. In 1935 the predecessor of petitioner corporation was insolvent. Valuable property which it owned in Florida, consisting of an island having some 1200 vacant lots, a hotel and apartment house, and other real estate, had been mortgaged and foreclosure proceedings had been filed. Petitioner corporation was organized to acquire the property which had been bid in on behalf of the trustees at the foreclosure sale. In acquiring the property petitioner assumed obligations amounting to $112,009.81 and issued shares of stock proportionally for the outstanding notes. On May 15, 1935, the board of directors elected Emmons president and also decided that petitioner's officers should serve without compensation until further order of the board. Emmons, who the Tax Court found was a practicing attorney of experience and wide business connections, worked actively in the interest of petitioner until October 1, 1948, and during these years made the corporation financially successful. The Tax Court found that Emmons devoted a great deal of time to petitioner's affairs, attending many directors' meetings, negotiating with some twenty-five groups for the sale and rental of petitioner's property, looking after collections, handling taxation matters, passing on and approving all bills, deeds to lots sold, hiring employees, etc. His time records show that he devoted at least 237 days to petitioner's affairs and during this period he was not reimbursed for any of his office expenses. It is undisputed that the recorded time did not include all time spent by Emmons in the service of petitioner.

Emmons was a partner in a law firm to which petitioner's predecessor corporation had issued notes secured by mortgage aggregating $45,131.58. Upon the dissolution of this law firm in 1936 Emmons, who was senior partner, took over as his share of the firm assets the 451 shares of petitioner's stock received by the law firm in return for the notes for

$45,131.58. These shares of stock were represented by Certificate No. 44. In 1942 Emmons transferred the certificate to the Detroit Orthopedic Clinic, reserving the sole voting rights in said stock until petitioner should be substantially liquidated. In 1946 Edwin L. Ecclestone bought Certificate No. 44 from the Clinic and demanded that it be transferred without reservation of voting rights. Shortly thereafter Ecclestone filed proceedings in the state courts of Michigan against Emmons and petitioner praying to have the voting rights held by Emmons canceled and to compel petitioner to transfer the certificate without reservation of the voting rights. These controversies were decided in favor of Emmons and petitioner and affirmed by the Supreme Court of Michigan, Ecclestone v. Indialantic, Inc., 319 Mich. 248, 29 N.W. 2d 679.

At a meeting of petitioner's board of directors June 8, 1948, a resolution was duly passed fixing at the sum of $50,000 the unpaid balance due Harold H. Emmons for his services since the organization of the company. The resolution was adopted unanimously by the stockholders and in October, 1948, after this resolution was adopted, Emmons released his voting rights in Certificate No. 44.

The Tax Court heard no evidence contradicting the testimony as to the reasonableness of the compensation voted for Emmons, but held that reasonable compensation for services rendered over the thirteen-year period was $32,500. The Tax Court said, "We have no doubt as to Emmons' skill, ability and experience. He had a successful law practice, rendered service to the city of Detroit and the United States Government and devoted extensive time to petitioner. * * *" No specific mention was made in the Tax Court's findings of the results obtained from Emmons's services which were, in brief, to completely rehabilitate the corporation so that stock which was issued at $100 par value in 1935, but actually without value at the time of issue, was surrendered in 1948 by all stockholders but Ecclestone to petitioner for cancellation at the price of $200 per share. Based upon this price, the outstanding stock in 1948 was worth approximately $225,000.

█ It is uncontradicted that the petitioner corporation was rehabilitated by the capable and constant efforts of Emmons. "In all of these activities", declared the Supreme Court of Michigan, "Emmons was the moving spirit." 319 Mich. 248, 251, 29 N.W.2d 679, 683. The resolution of the board of directors granting him compensation of $50,000 in addition to the $15,000 paid in previous years creates the presumption that the allowance was reasonable and proper. Ox Fibre Brush Co. v. Blair, 4 Cir., 32 F.2d, 42, 68 A.L.R. 696; Toledo Grain & Milling Co. v. Commissioner, 6 Cir., 62 F.2d 171; Mayson Manufacturing Co. v. Commissioner, 6 Cir., 178 F.2d 115. This rule, of course, is based upon the fact that the management of a business is presumably familiar with the amount and value of services rendered. This inference was greatly strengthened here by the fact that the resolution was unanimously approved by the stockholders.

The Tax Court produced no evidence to the effect that the compensation was unreasonable.

█ This court has repeatedly held that the Tax Court is not authorized to disregard uncontradicted testimony concerning the worth and the reasonableness of services rendered. The value of the services is unquestioned and the decision of the Tax Court ignores the undisputed facts. Capitol-Barg Dry Cleaning Co. v. Commissioner, 6 Cir., 131 F.2d 712; Mayson Manufacturing Co. v. Commissioner, supra; Loesch & Green Construction Co. v. Commissioner, 6 Cir., 211 F.2d 210; T. P. Taylor & Co. v. Glenn, D.C., 62 F.Supp. 495.

As to the point not decided by the Tax Court but stressed here by the Government, that the compensation was voted in consideration of the relinquishment

of Emmons's voting rights in Certificate No. 44, it suffices to say that the record does not support this contention which the Tax Court also failed to sustain.

The deduction in 1948 resulted in a net operating loss which the petitioner under Internal Revenue Code, 56 Stat. 819, 65 Stat. 505, 26 U.S.C.A. §§ 23, 122, carried forward as a deduction in 1949 in the amount of $28,597.29. Since the deduction was proper it follows that this carry-over was properly made.

The decision of the Tax Court is reversed and the case is remanded for further proceedings in accordance with this opinion.