**J. E. CRAIG FINANCE COMPANY, Inc.,**
**Plaintiff,**

**v.**

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 2796.**

United States District Court
W. D. South Carolina,
Rock Hill Division.

Jan. 16, 1962.

Roberts, Jennings, Thomas & Lumpkin, Alva M. Lumpkin, Sapp, Jordan & Sapp, Columbia, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., Bernard J. Schoenberg, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

WYCHE, Chief Judge.

J. E. Craig Finance Company, Inc. of Lancaster, South Carolina, was during the times mentioned herein, and is now engaged in the small loan business. Until about March 1, 1956, it was primarily owned and operated by two elderly gentlemen. About the first of March, 1956, O. S. Porter, Jr., who had previously been a small stockholder in the company, and Allen Sapp undertook to purchase all of the stock of this corporation and engaged immediately in the management and control of the corporation with O. S. Porter, Jr., as secretary and treasurer, and Allen Sapp as president.

For the year 1956, the corporation paid, and claimed as a deduction, a salary of $13,670.16 for O. S. Porter, Jr. and paid, and claimed as a deduction, a salary for Allen Sapp of $7,256.93 for the ten months of the year.

Under administrative procedure the Internal Revenue Service disallowed O. S. Porter's salary and reduced it to $9,-600.00 and disallowed Allen Sapp's salary and reduced it to $2,000.00.

J. E. Craig Finance Company instituted this action to recover the sum of $3,011.88, claiming that the salaries were rightfully deducted from income and that the refusal of the Internal Revenue Service to allow such salary deductions was erroneous.

The Government answered denying the material allegations of the complaint, and alleged that its refusal to allow the claimed deductions was proper.

The case was tried before me without a jury, and in compliance with Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT.

1. Allen Sapp is an attorney at law and has practiced law in Lancaster and in Columbia, South Carolina. He has served in the South Carolina Legislature, and as an Assistant Attorney General of the State of South Carolina. In early March, 1956, he returned to Lancaster where he purchased one-half of the stock in the plaintiff company and was elected president thereof and immediately began active participation in the affairs of the corporation where he contributed his legal talents and his full participation in administrative affairs of this small loan business. For ten months of 1956, he worked from eight in the morning to five in the afternoon on most days, and on other days he worked until eight or ten o'clock at night; he also participated in making collections from persons owing the corporation and instituted legal proceedings for such collections in some cases; he wrote letters soliciting business for the company among former constituents and friends; he, however, was employed for ten months of 1956, and for a short period during March of that year participated in lobbying for the corporation.

2. O. S. Porter, Jr. had been an employee in prior years of J. E. Craig Finance Company and was also a minor stockholder, and in early March, 1956, purchased the other half of the stock of the company and was elected its secretary and treasurer; he had lived in Lancaster for a long period of time and was thoroughly familiar with the affairs of the plaintiff company; he worked for the company regular and overtime hours during the whole of 1956.

3. Prior to the spring of 1956, this corporate taxpayer had been engaged for a period of years in the small loan business in Lancaster, South Carolina, with little or no competition. On March 31, 1956, the Governor approved Act No. 834, Acts and Joint Resolutions of the General Assembly, known as the Small Loan Act (effective July 1, 1956). Immediately after approval of the Act by the Governor, there commenced an influx of small loan companies into Lancaster offering substantial competition to the plaintiff company for the first time.

4. Prior to the effective date of this Act, small loan companies were largely, if not entirely, unregulated by the State and the method of effecting a loan was the preparation and execution of a simple note and chattel mortgage. The Act referred to required, or authorized by rules and regulations of the administering board, mandatory records, entries, ledgers, "shucks", daily and monthly reports, insurance forms, all of which required ten to twenty times the amount of work previously involved in making a single loan.

5. Prior to 1956, the company did not customarily make investigations of prospective borrowers, but after the passage and effectiveness of the Act referred to, and as a result of competing companies entering the community, investigations were necessary and were conducted by O. S. Porter, Jr. and Allen Sapp.

In 1954, the gross amount earned by the corporation was $20,968.09. In 1955, the gross amount earned by the corporation was $26,957.38. In 1956, the gross

amount earned by the Corporation was $27,458.84.

In 1954, officers' salaries were as follows: O. S. Porter, Jr., secretary, $5,732.40, J. E. Craig, president, $1,530.00, E. D. Craig, treasurer, $612.00, total $7,874.40; in 1955, the officers' salaries were as follows: O. S. Porter, Jr., secretary $7,593.90, J. E. Craig, president $2,830.50, E. D. Craig, treasurer $1,989.00, total $12,413.40; in 1956, the officers' salaries were as follows: O. S. Porter, Jr., secretary and treasurer, $13,670.16, Allen Sapp, president, $7,256.93, J. E. Craig for two months only, $829.46, E. D. Craig for two months only, $676.46, total $22,433.01.

These salaries were increased proportionately more than the gross earnings of the company. From 1955 to 1956, the accounts receivable decreased from $81,810.85 to $72,068.09.

6. For the taxable year involved in this controversy, reasonable compensation for O. S. Porter, Jr., as secretary and treasurer of the company, was $11,000.00, and reasonable compensation for Allen Sapp, as president of the company, was $4,500.00.

7. By stipulation of the parties, it was agreed, and I find, that the taxpayer corporation erroneously deducted two minor items not involving salaries on its income tax return for the taxable year involved in this controversy.

### CONCLUSIONS OF LAW.

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. The rights and duties of the parties are governed by the laws of the United States of America.

3. 26 U.S.C.A. § 162, provides: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including— (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

4. The sole issue here is the reasonableness of the salaries of O. S. Porter, Jr. and Allen Sapp as officers of the taxpayer corporation.

5. The Commissioner's determination carries a clear presumption of correctness, and places on the taxpayer the burden of proving that he is entitled to a greater deduction than the Commissioner allowed. Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Ernest Burwell, Inc. v. United States, (W.D.S.C.) 113 F. Supp. 26; see also, Brown Printing Co. v. Commissioner of Internal Rev., (CA 5) 255 F.2d 436.

6. No definite criterion is established by law to gauge the reasonableness of compensation paid to corporate employees. A number of factors are to be considered, but no single one is decisive. The relevant factors are listed in Mertens' Law of Federal Income Taxation, §§ 25.52 to 25.63, as follows: (1) The employee's qualifications; (2) extent and scope of employee's work; (3) prevailing rates of compensation; (4) size of the business; (5) ratio of salaries to gross income; (6) commission or percentage basis of payment; (7) general economic conditions; (8) salaries paid in prior years as comparative; (9) date of salary determination as a test; (10) evidentiary value of directors' action; (11) comparison of salaries with distributions to stockholders; (12) salaries paid in proportion to stock interest in corporation or to employees of closely held corporations. Ernest Burwell, Inc. v. United States, supra (113 F.Supp. 26); Mayson Mfg. Co. v. Commissioner of Internal Revenue, (CA 6) 178 F.2d 115.

The testimony of officers of similar and competing businesses well acquainted with the taxpayer's business should be given great weight, and, if undisputed, should not be disregarded. Loesch & Green Const. Co. v. Commissioner of Int. Rev., (CA 6) 211 F.2d 210; see also, Wright-Bernet v. Commissioner of Internal Revenue, (CA 6) 172 F.2d 343; Indialantic, Inc. v. Commissioner of Internal Revenue, (CA 6) 216 F.2d 203.

7. Considering the evidence as a whole and applying statutes involved and the principles of law applicable, it is my opinion that the salaries claimed were excessive, however, the extent of the reductions and disallowances was clearly erroneous.

8. Applying the applicable principles of law to the facts I have found, it is my opinion that reasonable compensation for O. S. Porter, Jr.'s services is Eleven Thousand ($11,000.00) Dollars, and reasonable compensation for Allen Sapp's services is Four Thousand, Five Hundred ($4,500.00) Dollars, for the taxable year involved. Erroneous deductions of minor items, not involving salaries, are resolved against plaintiff and in favor of the defendant.

Plaintiff is therefore entitled to judgment in an amount to be computed by the Internal Revenue Service in accordance with findings of fact and conclusions of law herein, together with interest thereon, and

It is so ordered.