**AUBURN & ASSOCIATES, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**AUBURN ENGINEERING, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. Nos. 68–1214, 68–1215.**

United States District Court,
W. D. Pennsylvania.

Dec. 22, 1971.

Samuel Y. Stroh, Joseph W. Conway, Suto, Power, Balzarini & Walsh, Pittsburgh, Pa., for plaintiffs.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Thomas R. Wechter, Washington, D. C., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

*Factual Statement*

The instant litigation issued from deficiencies assessed against the plaintiff taxpayers for the years 1963, 1964 and 1965. The taxpayers paid the deficiencies and filed claim for refund. After six months had passed the taxpayers filed these two actions for refund of those portions of the assessed deficiencies attributable to the Commissioner's disallowance of part of taxpayers' deductions for salaries and rentals. The cases were consolidated at an early stage and were tried together nonjury.

For fiscal year 1964 (the only year involved for Auburn Engineering), Auburn Engineering, Inc. (hereinafter "Engineering") had taken a deduction of $155,503.50 for compensation paid to officers. The Commissioner disallowed $79,750.00 of this as unreasonable. This and other minor disallowances not relevant here resulted in a tax deficiency of $40,490.93 plus $6,578.40 interest. The taxpayer paid this $47,069.33 and filed a refund claim for an overpayment of $39,875.00 plus $6,478.33 interest for a total of $46,353.33.

The deficiency assessed against Auburn & Associates, Inc., (hereinafter "Associates") arose from disallowances of certain deductions for three tax years, 1963, 1964 and 1965. For 1963 and 1964 only the deductions for office rental paid were in issue. For 1965 both rental and compensation to officers were in issue.

Of the rental deductions for 1963 the Commissioner disallowed $4,185.54. This and other minor disallowances not relevant here resulted in a deficiency of $3,204.97 plus $825.17 interest. After payment of this $4,030.14 the taxpayer filed a refund claim for $1,578.95 contesting disallowance of the rental. The refund claimed was divided as follows: $1,255.66 for overpayment and $323.29 for interest.

For 1964 the Commissioner disallowed $6,624.82 of office rental deductions claimed by Associates. A total deficiency of $3,416.76 was assessed with interest of $674.70. Associates paid the $4,091.46 but again contested the rental disallowance. Associates claimed $1,762.46 overpayment and $348.03 interest or a total of $2,110.49.

For 1965 the Commissioner disallowed $17,958.53 of office rental deductions and $146,573.00 of compensation deductions. With other disallowances not material here there was assessed a total deficiency of $82,217.45 plus $11,302.09 interest. Associates paid the deficiency and filed a refund claim contesting the rental and compensation disallowances. Associates claimed for 1965, $80,904.40 overpayment and $11,121.59 interest.

The evidence presented at trial covered the history of the two taxpayers. Associates was formed in 1948 by B. J. Auburn and H. G. Deardorf. A. J. Mosso and R. C. Avondo whose salaries have caused the main controversy here joined Associates in 1949. Mr. Deardorf thereafter left the firm (1950). At that time Mosso and Avondo assumed the position of officers in Associates. The minutes of a Board of Directors meeting held on April 3, 1950, reflects the understanding of the then sole stockholder of Associates, B. J. Auburn, and Mosso and Avondo that the latter would put forth extraordinary effort to make Associates successful but would defer adequate compensation pending the event. These minutes will appear hereinafter.

In 1956, Auburn, Mosso and Avondo and others formed Engineering. At that time it was called Auburn Atomic Engineering. This company was formed to handle that part of Associates' business involving nuclear energy projects.

The testimony showed that Mosso and Avondo were the driving forces in both taxpayers. Both men appear to have worked tirelessly to insure the success of these firms. During the early years their salaries were small. The success of the two firms was rather dramatic. Associates' sales went from $179,689.55 in 1950 to $4,313,847.18 in 1965. Engineering's sales went from $327,889.81 in 1956 to $1,666,456.29 in 1965. Auburn had continued as president of Associates until 1961. That year he assumed the position of Chairman of the Board and Mosso became the president. Mr. Auburn moved to the west coast and from his correspondence in the form of monthly reports we conclude that he represented the firm on the West Coast and maintained an office there.

The office building in dispute was constructed in 1959. It was built by Parkway Land Company, a partnership consisting of Auburn, his wife Roxanne, Mosso, Avondo and Leech. Both Associates and Engineering needed ever increasing office space suitable for engineering work. Approximately three acres of ground were purchased for $30,-000.00. The location is adjacent to the Parkway just east of Pittsburgh in an area where there are many research facilities and much commercial development. A building suitable for engineering offices was constructed for $430,-000.00. Mr. Mosso testified that the partners effected substantial savings by acting as their own architect, engineer and contractor.

Gross rentals deducted by the taxpayer consisted of cash payments made to lessor plus certain supplies and maintenance of the building and depreciation on certain improvements. These rentals are set forth hereinafter. The government's Exhibit GG sets forth the deductions taken by taxpayer. The question was whether the deductions for rent taken by the taxpayer exceeded fair rental value of the property.

The question of fair rental value was contested at trial by expert testimony. Mr. Kane, who was called as an expert by Associates testified that $4.00 per square foot was comparable to other rentals in the area of Associates' building and was reasonable. Mr. Berman who testified as an expert for the government placed the fair rental value at approximately $3.00 per square foot.

Plaintiffs' evidence on the compensation issue was presented principally in the form of testimony by Mosso.

Defendant's case in reply in large part consisted of statistical evidence and testimony regarding salaries paid to officers by other engineering firms.

The corporate minutes of Associates emphasize the inadequacy of the salaries paid Mosso and Avondo during the first eight years of operation. The minutes after 1960 repeatedly allude to the need to compensate Mosso and Avondo for past as well as present services. In his testimony Mosso specified the amounts of compensation during the years here in issue which were intended as compensation for past services. With regard to salaries received from Associates in 1965, Mosso testified that $75,-000.00 of his and $50,000.00 of Avondo's were for past services. As to 1964 salaries paid by Engineering, Mosso stated that $30,000.00 of his and $15,000.00 of Avondo's salary were for past services.

The minutes of the corporation and the monthly reports of Auburn reflect a long standing policy of the taxpayers to pay bonuses to their employees to reflect the efforts and abilities of the particular employee. Large bonuses were paid if the cash was available. Bonuses varied greatly in amount. Employees also received overtime pay but Mosso and Avondo, of course, did not receive pay for overtime.

During the years in issue Mosso and Avondo had the following ownership in-

terest in Associates, Engineering and Parkway Land Company:

Parkway Land Company, a partnership:

| | | |
|---|---|---|
| Mr. and Mrs. Basil J. Auburn | — 50 | percent |
| Mr. and Mrs. A. J. Mosso | — 25 | percent |
| Mr. R. C. Avondo | — 15 | percent |
| Mr. W. A. Leech | — 10 | percent |
| TOTAL | 100 | percent |

Auburn Engineering, Inc.

| | | |
|---|---|---|
| Basil J. Auburn | — 50 | percent |
| A. J. Mosso | — 25 | percent |
| R. C. Avondo | — 15 | percent |
| Other | — 10 | percent |
| TOTAL | 100 | percent |

Auburn & Associates, Inc. 1965

| | | |
|---|---|---|
| Basil J. Auburn | — 68 | percent |
| A. J. Mosso | — 8 | percent |
| R. C. Avondo | — 7 | percent |
| Other | — 17 | percent |
| TOTAL | 100 | percent |

We have been unable to ascertain any relationship between the total compensation paid or the amounts disallowed and the ownership interests of the officers.

## I. THE COMPENSATION ISSUE

### A. *Generally*

The taxpayers' position on the compensation issue is simply stated; the salaries at issue were fixed by the controlling stockholder of both corporations in an arm's length transaction. Furthermore, the compensation was for services of very high caliber actually rendered, past and present.

The government's position in essence is that the taxpayers simply paid out too great a portion of income as compensation. The argument of the government that Auburn treated Mosso and Avondo as members of his family, and that there was accordingly an unusual relationship between the controlling stockholder and the officers whose salaries are at issue, is without substance in our judgment.

During the plaintiffs' case the testimony of Mosso was persuasive that he and Avondo had employed their substantial abilities to the fullest to make both taxpayers successful. His testimony revealed that he generally worked 16 hours per day and sometimes more. Over the years he and Avondo acted as chief executive officers, chief engineers, handled labor negotiations, made legal and accounting decisions, acted as members of the Board of Directors, and did all sales work, except what Auburn was doing on the west coast. In this effort they not only did the work that more normally would have been assigned to several officers but did this work during the earlier years of both taxpayers' existences for unsubstantial (less than normal) compensation. Mr. Mosso's testimony that substantial portions of the salaries at issue were for services rendered during those early years of operation when salaries were low was persuasive. The taxpayers' position is persuasive that such payments for past services were made pursuant to an agreement between the then controlling stockholder, B. J. Auburn and Mosso and Avondo. The agreement is reflected in the minutes of the Board of Directors meeting of April 3, 1950 (Plaintiffs' Exhibit 1(A)). An awareness of this agreement and an intention to compensate Mosso and Avondo for their efforts is also reflected in subsequent corporate minutes (Plaintiffs' Exhibit 1(B) and Defendants' Exhibit W).

Defendants' evidence we repeat came in the form of testimony and statistical evidence of salaries paid officers of other engineering consulting firms specifically, Michael Baker, Jr., Inc., Gilbert & Associates Inc., Gannett, Fleming, Cordry & Carpenter, Inc., and Sanders & Thomas, Inc. The information regarding these firms is summarized in Defendants' Exhibit JJ. The compensation paid by these firms to their officers generally was less both in gross dollars and as a percentage of sales than the amounts paid by the taxpayers to Mosso and Avondo in the contested years. However, these firms are not strictly comparable to the taxpayers. We note that there is no evidence that the officers in these concerns, expended efforts comparable to those of Mosso and Avondo although they on doubt were dedicated. These firms are generally much older than either As-

sociates or Engineering, more established, with more background and with more depth to management in the numerical sense.

The oft quoted standard to be applied in reasonable compensation cases is set out in Mayson Manufacturing Co. v. Commissioner of Internal Revenue, 178 F.2d 115 (6th Cir. 1949):

"Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with gross income and net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper. [citations omitted]. The situation must be considered as a whole with no single factor decisive." Mayson Mfg. Co. v. Commissioner of Internal Revenue, 178 F.2d 115 at 119.

Deductions are statutory and are available only to the extent allowed by the statute. Section 162 of the Internal Revenue Code provides:

"(a) In general—there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

\* \* \* \* \* \*

(3) rentals . . . . ."

§ 162 Internal Revenue Code of 1954.

■ It has been established that if a compensation deduction is disallowed in whole or in part by the Commissioner, the burden is on the taxpayer to prove the amount claimed to be "reasonable." Botany Worsted Mills, Inc. v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L. Ed. 379, (1929).

B. *Auburn Associates Compensation disallowance for 1965.*

The compensation paid by Associates for 1965 is unusual when viewed with compensation for the preceding years.

| Billings | Mosso | Avondo |
|---|---|---|
| 1962 – $2,453,728.00 | $112,182.00 | $69,327.00 |
| 1963 – 2,755,245.00 | 94,154.00 | 53,000.00 |
| 1964 – 3,306,229.00 | 112,130.00 | 60,500.00 |
| 1965 – 4,313,847.00 | 217,098.00 | 128,000.00 |

■ The compensation approximately doubled while billings increased about 30 percent. We are mindful of Mosso's testimony regarding the great efforts he and Avondo expended, and of case law, upholding extraordinary compensation in cases of great individual effort. William S. Gray & Co. v. United States, 35 F.2d 968, 68 Ct.Cl. 480 (1929) (NOTE: Opinion erroneously dated 1925 in original report). Mosso testified that the efforts expended were consistent over a period of years. There was no evidence that in 1964–65 Mosso and Avondo assumed such an increase in responsibility or so vastly increased their efforts as to support an unusual increase in a single year. That some reasonable increase was appropriate is not in dispute. In computing the disallowances in this case the Commissioner allowed a 15 percent increase. Mr. Jannis, an expert called by plaintiff, also spoke in terms of 15 percent per year as a reasonable salary increase for officers. We conclude that in a successful growing company such as was involved here such an increase is reasonable. The government disallowed $88,148.00 of Mosso's salary and $58,-425.00 of Avondo's salary which resulted

in an allowance of $128,950.00 to Mosso and $69,575.00 to Avondo. The government allowed only the 15% increase.

■ We must consider the remaining question in determining reasonable compensation for Mosso and Avondo for 1965. Mr. Mosso testified that $75,-000.00 of his and $50,000.00 of Avondo's salary for 1965 was for services rendered during Associates' early years. The deductibility of such payments is well established, Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733 (1930), Indialantic, Inc. v. Commissioner of Internal Revenue, 216 F.2d 203 (6th Cir. (1954)). The corporate minutes contain evidence of an intention to compensate Mosso and Avondo for past services.[1] In view of the fact that this is a close corporation, the absence of a specific resolution stating the exact amount to be paid for such services is not a controlling factor, see L. R. Schmaus Co. v. Commissioner of Internal Revenue, 406 F.2d 1044 (7th Cir. 1969). We find Mosso's testimony credible and reasonable because an examination of the corporate records convinces us that Mosso and Avondo were inadequately paid during the early years of their employment.[2]

1. The corporate minutes of Associates for April 3, 1950, read as follows:

April 3, 1950

"Auburn & Associates, Inc.

The recent election of A. J. Mosso as Vice President, R. C. Avondo as Treasurer and L. S. Houck, Jr., as Secretary along with the departure of Hugo Deardorf has preciptaed [sic] the necessity of a special meeting of the Board of Directors, which was held today.

Since this was a lengthly [sic] meeting only an outline of the matter will be recorded in the minutes listed below.

1. A. J. Mosso and R. C. Avondo took the company from verge of bankruptcy to a successful operation.

2. They negotiated the departure of Hugo Deardorf.

3. Mr. Mosso and Mr. Avondo both have job offers from competitors involving large blocks of stocks and salaries 5 to 6 times their salaries at Auburn and only half as many hours of work per week.

4. Mr. B. J. Auburn is sole stockholder of the company.

5. Mr. Auburn acknowledges the exceptional engineering talent of the above men in addition to their character, education, training, experience, management. abilities, sales abilities, supervisory abilities which is a very rare kind of combination. These individuals could easily rise to executive positions in any major corporation.

Mr. Auburn also acknowledges the fact that if Messrs Mosso, Avondo and Houck remain with the company, its growth and success is assured.

7. Mr. Auburn asked the above men to remain in the company to work hard, use all of their exceptional talents, work a 100 hour week, work on holidays and Sundays as in the past without any overtime pay, to forego vacations and make the company a big success. All of the above is being asked for compensation which is a mere pittance compared with what is expected.

8. Messrs Mosso, Avondo and Houck agreed to do all of the above and more if and when the company grew and prospered that they would be handsomely rewarded for their efforts. It was recognized that a considerable risk was being taken by these people for they could work a 100 hours per week for 10 years at 10% of their earning capacity and if they failed to make the company grow and prosper the financial loss to these people would be horendous [sic].

9. Mr. Auburn, the sole stockholder, agreed to the terms of his employees.

10. The die was set so the meeting was ajourned [sic].

/S/ L. S. Houck Jr.
L. S. Houck, Jr
Secretary"

2. Table of salaries paid by Associates taken from defendant's Exhibit QQ:

| Year | Mosso | Avondo |
|------|-------|--------|
| 1949 | $6,970.26 | $5,666.61 |
| 1950 | 7,600.00 | 6,875.00 |
| 1951 | 8,942.94 | 9,102.24 |
| 1952 | 13,214.96 | 13,314.96 |
| 1953 | 14,444.96 | 14,444.96 |
| 1954 | 17,952.16 | 16,727.36 |
| 1955 | 23,535.56 | 16,277.36 |
| 1956 | 25,036.96 | 19,046.36 |
| 1957 | 39,580.76 | 28,096.31 |
| 1958 | 52,500.00 | 39,327.29 |
| 1959 | 86,154.40 | 53,884.96 |
| 1960 | 100,000.00 | 69,327.36 |
| 1961 | 91,000.00 | 60,327.28 |
| 1962 | 110,000.00 | 69,327.44 |
| 1963 | 92,000.00 | 54,327.36 |
| 1964 | 110,000.00 | 61,827.36 |
| 1965 | 215,000.00 | 128,000.16 |

We believe they did exert unusual effort and conclude that it is reasonable and just that they be compensated for it, particularly for those early years. Allowing a 15 percent increase and the amounts for past services we conclude that the reasonable compensation for Mosso and Avondo is as follows:

Mosso

| 1964 salary | $112,130.00 | |
|---|---|---|
| 15% increase | 16,820.00 | $128,950.00 |
| Past services | | 75,000.00 |
| Reasonable compensation | | $203,950.00 |

Avondo

| 1964 salary | 60,000.00 | |
|---|---|---|
| 15% increase | 9,075.00 | 69,575.00 |
| Past services | | 50,000.00 |
| Reasonable compensation | | $119,575.00 |

We therefore conclude that $13,148.00 of Mr. Mosso's and $8,425.00 of Mr. Avondo's respective 1965 salaries were properly disallowed.

C. *1964 Compensation Issue for Auburn Engineering.*

We conclude that the compensation issue is controlled by the same considerations for both Engineering and Associates.

■ We note one additional matter in the Engineering case. There was a disallowance of the salary paid B. J. Auburn ($10,000.00). Since we received no evidence that Mr. Auburn actually rendered any services for Engineering during the 1964 tax year we conclude that the Commissioner's disallowance of this $10,000.00 was proper.

For 1964 Engineering took deductions for salary paid Mosso and Avondo of $66,000.00 and $32,500.00 respectively. For 1963 the salaries had been $17,000.00 and $8,000.00 respectively. Mr. Mosso testified that of the 1964 salaries $30,000.00 of his and $15,000.00 of Mr. Avondo's were for past services. We conclude that the following are reasonable amounts of compensation for 1964:

Mosso

| 1963 salary | $17,000.00 | |
|---|---|---|
| 15% increase | 2,250.00 | $19,250.00 |
| Past services | | 30,000.00 |
| Reasonable compensation | | $49,250.00 |

Avondo

| 1963 salary | $8,000.00 | |
|---|---|---|
| 15% increase | 1,200.00 | $9,200.00 |
| Past services | | 15,000.00 |
| Reasonable compensation | | $24,200.00 |

We therefore conclude that it was proper to disallow $16,750.00 of the deduction taken for Mosso's salary and $8,300.00 of the deduction taken for Mr. Avondo's salary.

## II. THE RENTAL ISSUE

■ The evidence on the issue of reasonable rental which could be deducted for office space for Associates consisted of conflicting expert testimony, we repeat. After hearing the two experts (Mr. Kane for Associates and Mr. Berman for defendant) examining their reports and personally viewing the property we are persuaded that the conclusions of Mr. Kane are the more reasonable. We therefore hold that the fair rental value of plaintiffs' premises during the relevant period was $124,600.00 per year. This is based upon Kane's investigation of the property showing 31,153 square feet of office space available at a fair market value of $4.00 per square foot.

The total deductions claimed with respect to the rental property are as set forth in defendant's Exhibit GG:

| 1963 | — | $114,680.00 |
|---|---|---|
| 1964 | — | 123,994.20 |
| 1965 | — | 138,535.62 |

Only in 1965 did gross rentals exceed the fair annual rental value of $124,600.00. We hold that the disallowances of $4,185.54 rental for 1963 and $6,624.82 rental for 1964 were improper. For 1965 the Commissioner had disallowed $17,958.53 of the amount deducted as rental. We hold that only $13,935.62 of this disallowance was proper and that the re-

maining $4,022.91 was improperly disallowed.

## III. CONCLUSION

A. With regard to Auburn Engineering's 1964 return the Commissioner disallowed a total of $79,750.00 of the amount claimed as a compensation deduction:

| | | | |
|---|---|---|---|
| B. J. Auburn | $10,000.00 | of | $10,000.00 |
| A. J. Mosso | 46,450.00 | of | 66,000.00 |
| R. C. Avondo | 23,300.00 | of | 32,500.00 |
| TOTAL | $79,750.00 | | |

The proper disallowances are:

| | |
|---|---|
| B. J. Auburn | $10,000.00 |
| A. J. Mosso | 16,750.00 |
| R. C. Avondo | 8,300.00 |
| TOTAL | $35,050.00 |

For 1964, the Commissioner erroneously disallowed $44,700.00 in deductions on the return of Auburn Engineering, Inc.

B. With regard to Auburn & Associates' 1963 return the Commissioner had disallowed $4,185.54 of the taxpayer's rental deduction. This disallowance was erroneous in its entirety.

C. With regard to Auburn & Associates' 1964 return, the Commissioner had disallowed $6,624.82 of the taxpayer's rental deduction. This disallowance was erroneous in its entirety.

D. With regard to Auburn & Associates' 1965 return, the Commissioner had disallowed $146,573.00 of taxpayer's compensation deduction. This disallowance was erroneous to the extent of $125,000.00. There was also disallowed $17,958.53 of taxpayer's rental deductions. This disallowance was erroneous to the extent of $4,022.91. The total of erroneous disallowances for 1965 was $129,022.91.

E. The taxpayers are entitled to judgment in their favor on their respective claims to the extent that the above erroneous disallowances resulted in overpayment of taxes and for that part of the interest paid which was interest on such overpayments. Plaintiffs are entitled to interest on the foregoing amounts from November 30, 1967.

The foregoing shall constitute our findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

The parties are directed to recompute the plaintiffs' taxes in accordance with the foregoing opinion and to submit a proposed order reflecting such recomputation.